**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>JAULIL WILLIAMS,<br><br>*Defendant*. | Civil No.: 2:17-cr-00344 (KSH) |

## I. Introduction

The Court is in receipt of Jaulil Williams' *pro se* letter requesting release to home confinement, which was filed on June 4, 2020. (DE 29 ("Williams Letter").) The Court construes this request as one for relief pursuant to the compassionate release statute, 18 U.S.C. § 3582(c). For the following reasons, the Court denies the motion.

## II. Background

As a preliminary matter, the Office of the Public Defender determined that it would not file supplemental pleadings on behalf of Williams because he "does not appear to fall within the class of people that the Centers for Disease Control ["CDC"] considers the most vulnerable to COVID-19…nor does [he] appear to raise medical condition, age or family circumstances as a basis for the motion." (DE 30.)

The docket reveals that Williams pled guilty on January 29, 2018, to one count of illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (DE 11, 12, 13.) On January 31, 2019, this Court sentenced him to 100 months imprisonment followed

by three years of supervised release. (DE 18, 19). He currently is serving his sentence at FCI Danbury and his projected release date is July 30, 2024. (DE 29-1 ("BOP Reentry Plan").)

Williams is 30 years old and does not claim to suffer from any serious medical ailments.[1] He does not identify specific medical conditions in his letter, and instead, more generally, states that COVID-19 presents an "ongoing threat to my health in the BOP." (Williams Letter, at 1.) Williams cites to Attorney General William Barr's April 3, 2020 memorandum directing the BOP to review at-risk inmates for release to home confinement, and argues that "conditions merit transfer to home confinement or release to even more inmates." (Williams Letter, at 1-2). He notes that the virus affects younger, otherwise healthy individuals—"[e]ven those younger than 65 and/or otherwise healthy patients are not immune from infections or serious complications." (*Id.* at 2.) He asserts that incarcerated individuals are at a heightened risk due to their living conditions and inability to take "proactive measures to keep themselves safe." (*Id.* at 2-3.) Finally, he states that there is a class action against FCI Danbury that details the "unfit" living conditions there and the prison's inadequate response to the pandemic. (*Id.* at 3.) He further notes the severity of the outbreak at FCI Danbury—it had the "top 3" number of cases. (*Id.* at 3.)

---

[1] Williams presents no medical conditions in his letter and his BOP medical records have not been provided to the Court. His presentence report indicated that he suffers from certain physical conditions, including traumatic brain injury, hearing loss, and seizures. (DE 16.) He also suffers from substance abuse and addiction issues. (*Id.*) However, these are not underling conditions the CDC recognizes as putting him at an increased risk for severe illness from COVID-19.

2

### III. Discussion

A district court generally has limited authority to modify a sentence once it has been imposed. *See United States v. Epstein*, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) (Wolfson, J.); *Dillon v. United States*, 560 U.S. 817, 825 (2010). However, the First Step Act, enacted in December 2018, permits prisoners to file a motion for compassionate release directly with the Court if they have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582 (c)(1)(A). As relevant here, the statute empowers the Court to reduce a term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a),] based on (i) "extraordinary and compelling reasons," provided that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582 (c)(1)(A).

The relevant policy statement, U.S.S.G. § 1B1.13, which was enacted before the First Step Act was passed, echoes the requirement of "extraordinary and compelling reasons," and also requires that the defendant not present a danger to any other person or the community. U.S.S.G. § 1B1.13.[2] The accompanying application notes set forth

---

[2] The Sentencing Commission has not updated its policy statement since the passage of the First Step Act. Accordingly, the policy statement "provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it 'does not constrain [a court's] independent assessment of whether 'extraordinary and compelling' reasons warrant a sentence reduction under § 3582(c)(1)(A).'" *United States v. Alexander*, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020) (Wolfson, J.) (quoting *United States v. Rodriguez*, 2020 WL 1627331, at *4 (E.D.Pa. Apr. 1, 2020) (Brody, J.)).

3

examples of medical conditions that are considered "extraordinary and compelling," and, more generally, it states that such a condition would be satisfied by a defendant who is "suffering from a serious physical or mental condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*, Application Note 1(A). The statement also includes a catchall provision, which provides that "others reasons" may be sufficient to grant a request if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.,* Application Note 1(D).

As a preliminary matter, however, Williams must first establish that he has satisfied the procedural prerequisites for judicial review—namely, that he has exhausted his administrative remedies. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Neither Williams nor the government has addressed whether this requirement has been satisfied.[3] There is no indication that Williams has requested any sort of relief from the

---

[3] Instead of addressing the relevant question of whether Williams has exhausted his administrative remedies, the government focuses its argument on the Court's lack of authority to designate a defendant's place of incarceration. (DE 32, (Gov't Opposition).) The Court agrees that 18 U.S.C. §3624(c)(2), together with the CARES ACT, provides the BOP, rather than the Court, the discretion to transfer a defendant to home confinement. Furthermore, the plain language of the compassionate release statute only grants the Court the authority to "reduce" a defendant's "term of imprisonment." 18 U.S.C. §3582(c)(a)(A). However, it appears that the Court may reduce a defendant's term of imprisonment to time served and impose a period of home confinement as a condition of supervised release. 18 U.S.C. § 3582(c)(1)(A).

warden and without this information, the Court is constrained to deny Williams' motion.

Even if Williams had demonstrated that he had exhausted his administrative remedies, however, he has not established that extraordinary and compelling reasons justify a sentence reduction. As the government notes, Williams has only cited "generalized concerns about contracting the virus and conditions at FCI Danbury[.]" (Gov't Opposition, at 1.) The Court acknowledges the realities of Williams' position—incarcerated individuals cannot practice social distancing, control their exposure to large groups, or otherwise engage in proactive safety measures as recommended. Significantly, however, the "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 U.S. at 597. Williams is 30 years old and does not allege to suffer from any medical conditions that the CDC indicates would put him at an increased risk of suffering from severe illness if he contracted the virus. The BOP Reentry Plan that Williams submitted to the Court, which categorizes him as "Healthy or Simple Chronic Care," provides the only insight into the current state of his apparently good health. (BOP Reentry Plan.) Because he has not demonstrated that he has exhausted his administrative remedies nor has he established that extraordinary and compelling reasons justify a sentence reduction, the Court need not address the § 3553(a) factors or dangerousness considerations.

## IV. Conclusion

Williams' motion for compassionate release is DENIED without prejudice. An appropriate order will follow.

Date: August 24, 2020

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.